UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

ANGEL J. MEDINA,                    )    1:13CV1183
                                    )
            Plaintiff               )
                                    )
      v.                            )  MAG. JUDGE KENNETH S. McHARGH
                                    )
COMMISSIONER OF SOCIAL              )
      SECURITY ADMIN.,              )
                                    )
                                    )
            Defendant               )  MEMORANDUM
                                    )  AND ORDER

McHARGH, MAG. JUDGE

The issue before the court is whether the final decision of the Commissioner of Social Security ("the Commissioner") denying Plaintiff Angel J. Medina's application for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C § 1381 et seq., is supported by substantial evidence and, therefore, conclusive.

I.  PROCEDURAL HISTORY

On August 6, 2009, Plaintiff Angel J. Medina ("Medina") applied for Supplemental Security Income benefits.  (Doc. 11, Tr., at 133-135.)  Medina stated that he became unable to work because of his disabling condition on June 1, 2009.  (Tr., at 133, 145, 150.)  Medina listed his physical or mental conditions that limit his ability to work as "Breathing/sleep apnea/depression."  (Tr., at 150.)  These

conditions, however, are not solely the basis for his current claims of disability before this court.

Medina's application was denied initially and upon reconsideration. (Tr., at 84-86, 90-92.) On September 13, 2010, Medina filed a written request for a hearing before an administrative law judge. (Tr., at 93-95.)

An Administrative Law Judge ("the ALJ") convened a videoconference hearing on June 28, 2011, to hear Medina's case. (Tr., at 48-79.) Medina was not represented by counsel at the hearing. (Tr., at 51-52.) Norma D. Stricklin ("Stricklin"), a vocational expert, attended the hearing and provided testimony. (Tr., at 51, 71-77.)

On December 12, 2011, the ALJ issued his decision applying the standard five-step sequential analysis[1] to determine whether Medina was disabled. (Tr., at

---

[1] Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a), 416.920(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001). The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. Id. § 404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. Id. § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. Id. § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the

31-42.)  Based on his review, the ALJ concluded Medina was not disabled.  (Tr., at 31, 42.)  Following the issuance of this ruling, Medina sought review of the ALJ's decision from the Appeals Council.  (Tr., at 16-21.)  However, the council denied Medina's request for review, thus rendering the ALJ's decision the final decision of the Commissioner.  (Tr., at 1-3.)  Medina now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

Medina briefs seven legal issues:

1.  An ALJ has a duty to proffer to claimant any evidence received post-hearing.  Here, the ALJ did not proffer the report of the post-hearing consultative physical examination ordered by the ALJ (which showed disability), the letter from a State-agency consultant criticizing the CE report, and the CE's resulting restatement of her opinion to claimant's detriment.

2.  An ALJ has a heightened duty to unrepresented claimants, especially claimants with limited understanding.  Medina was unrepresented, and had poor English, low IQ, and other severe mental conditions.  Yet the ALJ did not clarify repetitive hand use, interpersonal interactions, and anxiety and psychosis, nor explain the issues meaningfully, and did not clarify how the named jobs could be performed without literacy.

3.  An ALJ must explain why the opinion of a State-agency review doctor is not adopted.  Here, the decision gave "significant weight" to

---

claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled.  Id. § 404.1520(a)(4)(v).

The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir.1997).

*Wilson  v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004).

3

State-agency reviewer Dr. Lewin, but inaccurately stated, and without
explanation failed to adopt, some of the restrictions assigned by Dr.
Lewin, including only "minimal" interactions and only a low-stress
environment.

4.  An ALJ must explain why the opinion of the agency's consultative
examiner is not adopted.  Here, the decision selectively considered and
did not address most of the relevant findings in the psychological
consulting examination report by Dr. Halas, despite giving that report
significant weight.

5.  An ALJ must explain why the opinion of the agency's consultative
examiner is not adopted.  Here, the decision discounted the report by
agency's consulting examiner Dr. Zeck as being inconsistent with a
prior examination, but failed to note the worsening of Medina's
condition between the two examinations, as shown by Medina's
seeking psychiatric treatment and an involuntary commitment to a
psychiatric unit.

6.  An ALJ must adequately evaluate the restrictions caused by each
impairment. Here, the decision did not adequately evaluate the
Plaintiff's ability to do repetitive, frequent handling and fingering,
which the vocational expert testified is necessary for all of the named
occupations.

7.  An ALJ must resolve any conflicts between the testimony of a
vocational expert and the Dictionary of Occupational Titles.  Here, the
three light occupations named are inconsistent with the hypothetical
question in the areas of hand use and amount of interaction with
people, yet the ALJ made no effort to clarify these conflicts for the
unrepresented, incapable claimant.

(Doc. 17, amended brief, at 1-2.)  Medina characterizes all but one of his claims as

"legal errors," with the exception of the fifth.  (Doc. 20, at 2.)


## II.  PERSONAL BACKGROUND INFORMATION

Medina was born on October 6, 1975, and was 33 years old as of his

application date.  (Tr., at 133, 145.)  Accordingly, Medina was at all times

4

considered a "younger person" for Social Security purposes.  See 20 C.F.R. §§ 404.1563(c), 416.963(c).  Medina's highest level of education was eleventh grade high-school.  (Tr., at 153.)  He has past work experience as a dishwasher.  (Tr., at 72-73, 151.)

### III.  MEDICAL EVIDENCE[2]

Disputed issues will be discussed as they arise in Medina's brief alleging errors by the ALJ.  A short summary of relevant medical history follows here.  As noted earlier, Medina ("Medina") applied for Supplemental Security Income (SSI) benefits on August 6, 2009.  (Doc. 11, Tr., at 133-135.)  Medina had reported the physical or mental conditions that limit his ability to work as "Breathing/sleep apnea/depression."  (Tr., at 150.)

On December 16, 2009, Richard Halas, M.A., a clinical psychologist, performed a mental status examination of Medina, and prepared a Psychological Report.  (Tr., at 195-200.)  Subsequently, on December 28, 2009, Caroline Lewin, Ph.D., prepared a Mental RFC Assessment concerning Medina.  (Tr., at 201-218.)

Beginning in late December 2009, and over the following two months, Medina visited the Nord Center, seeking mental health services.  (Tr., at 239, 253.)  Medina reported that he was depressed and suicidal.  Nord personnel attributed his

---

[2] The following is merely a brief summary of the medical evidence relevant to the undersigned's decision.  It is not intended to fully reflect all of the evidence the undersigned took into consideration.

depression, at least in part, to his then-recent loss of employment.  Medina had a
psychological evaluation at Nord on February 25, 2010.  (Tr., at 255.)

On March 9, 2010, Medina was admitted to the Psych Department[3] at
Community Regional Medical Center in Lorain, where he remained for about three
days.  (Tr., at 266, 279.)  Theophilus Arthur-Mensah, M.D.,  completed a Psychiatric
Admit Note, in which Dr. Mensah stated that Medina was being admitted "due to
increasing auditory hallucinations, suicidal ideation, responding to internal stimuli,
voices telling him to hurt himself."  (Tr., at 266.)  Apparently, Medina was
accompanied by his wife.  Medina stated "he is here because he is depressed."
Medina denied any current AV hallucinations, although admitting a long history of
such hallucinations.  (Tr., at 266.)  Medina also denied any current suicidal
ideation.  (Tr., at 267.)

On August 3, 2010, Medina appeared before Thomas Zeck, Ph.D., a
psychologist, for an adult clinical interview.  (Tr., at 278-284.)  On August 9, 2010,
Kristen Haskins, Psy.D., reviewed all the evidence in the file, and affirmed Dr.
Lewin's December 28, 2009, assessment as written.  (Tr., at 285-286.)

Medina's hearing before the ALJ took place on June 28, 2011.  (Tr., at 48-79.)
 As the hearing concluded, the ALJ directed Medina to appear for a consultative
examination, to get an assessment of the condition of his back.  (Tr., at 78.)

---

[3]  Medina also complained of a sore throat and heartburn, and was examined by
Mohamed Sanad, MD, for those physical complaints.  (Tr., at 264.)

Medina was then examined by Kimberly Togliatti-Trickett, M.D., for a disability evaluation on September 7, 2011.  (Tr., at 333-343.)

## IV.  TESTIMONY OF VOCATIONAL EXPERT

At the hearing, the vocational expert, Norma Stricklin, testified that Medina had past employment as a dishwasher, DOT 318.687-010, which is unskilled with an SVP of 2.  As described by Medina, it was performed at the light level.  (Doc. 11, tr., at 72.)

The ALJ posed a hypothetical question concerning an individual with the claimant's age, education, and work experience.  (Tr., at 72.)  Stricklin was further asked to assume that the person has no exertional limitations, but would be limited to simple, routine, repetitive tasks.  The person would require a work environment where changes take place no more than occasionally, and there is no more than occasional interaction with the general public or coworkers.  Additionally, the person would be limited to occupations which do not require written communication in English, although verbal communication in English would be fine.  (Tr., at 72.)  The ALJ asked, "Could this hypothetical individual perform any of the claimant's past jobs?"  Stricklin answered yes.  (Tr., at 72-73.)

The ALJ then asked if there were any other jobs that exist in the local, regional or national economy, for this hypothetical?  In response to the hypothetical, Stricklin answered that there are other medium, unskilled jobs, such as dry cleaner helper, DOT 362.686-010, which is medium, unskilled, with an SVP of 2.  Stricklin

7

estimated there would be 1,500 jobs in the state of Ohio, or 55,000 nationally. She also mentioned jobs such as sandwich makers, DOT 317.644-010, which is also medium, unskilled, with an SVP of 2. There are approximately 3,000 jobs in the state, and 150,000 nationally. (Tr., at 73.) In addition, Stricklin named jobs such as hand packagers, DOT 920.587-018, and said there are 5,000 such jobs in the state of Ohio, and 200,000 nationally. (Tr., at 73-74.)

The ALJ next modified the hypothetical, and asked the vocational expert to assume an individual the claimant's age, education, and work experience. This hypothetical individual would be limited to the full range of exertionally light work. The person could never climb ladders, ropes, or scaffolds, but could occasionally crawl, stoop, and crouch. The individual could engage in bilateral gross manipulation of objects, and bilateral fine finger manipulation of objects on a frequent basis. The hypothetical individual should avoid all exposure to the use of hazardous machinery, operational control of moving machinery, and unprotected heights. This person would be limited to occupations which do not require written communication in English, and would be limited to simple, routine, repetitive tasks. The person would be limited to a work environment where changes take place no more than occasionally, and there is no more than occasional interaction with the general public or coworkers. The ALJ asked Stricklin if this hypothetical individual could perform any of the claimant's past work, to which she responded: "Yes, as he described it." (Tr., at 74.)

8

The ALJ then asked if there were any other jobs that exist in the local or national economy, for this modified hypothetical?  Stricklin responded that, at the light level, there would be jobs as cleaners, DOT 323.687-014.  At least 5,000 such jobs in Ohio, or 125,000 nationally.  Also, laundry workers, DOT number 302.685-010.  At least 2,500 jobs in the state of Ohio, and 100,000 nationally.  An additional job would be cafeteria server, DOT 319.474-010.  Approximately 1,500 jobs in the state, or 75,000 nationally.  (Tr., at 75.)

The ALJ then posited a third hypothetical:  Assume a hypothetical individual the claimant's age, education, and work experience.  This hypothetical individual would be limited to the full range of exertionally sedentary activity; otherwise, this hypothetical would effectively mirror that of the second hypothetical.  In response to the ALJ's question, Stricklin stated that this (third) hypothetical individual could not perform any of claimant's past work.  (Tr., at 75.)

The ALJ then asked if there are other jobs in the local or national economy that this (third) hypothetical individual could perform.  Stricklin answered that, at the sedentary level, there would be jobs such as woodworking inspector, DOT number 669.687-014.  There are approximately 1,200 jobs in the state of Ohio, or at least 50,000 nationally.  In addition, there would be jobs as table workers or bench handlers, DOT 739.687-182, approximately 1,600 jobs in Ohio, or 75,000 nationally.  Also, jobs such as circuit board inspectors, DOT 726.684-110, approximately 1,000 jobs in Ohio, or 50,000 nationally.  (Tr., at 76.)

9

Next, the ALJ modified both the second and third hypotheticals (above) with the following additional limitation:  ". . . the individual might be able to engage in gross manipulation and fine finger manipulation of objects on no more than an occasional basis . . ."  The expert testified that the additional limitation would change the prospect for those jobs, in that they would require frequent use of "the upper extremities," presumably meaning hands and fingers, both the jobs as light level and at the sedentary level.  (Tr., at 76.)  In other words, there would be no jobs available.  (Tr., at 77.)

Similarly, the ALJ asked if, instead of limiting the manipulation restrictions, simply adding "the limitation that the individual might be off task as much as 15 percent of a given work day, would that change the prospect for jobs?"  (Tr., at 77.)  Stricklin responded that "[s]uch a person could not perform to the work standard."  (Tr., at 77.)

V.  ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant has not engaged in substantial gainful activity since August 6, 2009, the application date (20 CFR 416.971 et seq.).

2.  The claimant has the following severe impairments:  Obesity, Low Back Pain, Carpal Tunnel Syndrome, a Depressive Disorder, an Anxiety Disorder, a Personality Disorder, and Borderline Intellectual Functioning (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the

listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F. R. 416.967(b) except that he can never climb ladders, ropes or scaffolds, and can only occasionally stoop, crouch or crawl.  In addition, the claimant is limited to frequent bilateral gross manipulation and fine-finger manipulation of objects, and should avoid all exposure to the use of hazardous machinery, operational control of moving machinery, and unprotected heights. The claimant is also limited to occupations that do not require written communication in the English language. Finally, the claimant is relegated to the performance of simple, routine, and repetitive tasks, in a work environment where changes occur no more than an occasional basis, and where there is not greater than occasional interaction with the general public or coworkers.

5.  The claimant has no past relevant work (20 CFR 416.965).

6.  The claimant was born on October 6, 1975, and was 33 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.  The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.  The claimant has not been under a disability, as defined in the Social Security Act, since August 6, 2009, the date the application was filed (20 CFR 416.020(g)).

(Doc. 11, Tr., at 33-42.)

11

## VI.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act.  See 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  See 20 C.F.R. §§ 404.1505, 416.905.

## VII.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether the ALJ applied the correct legal standards, and whether the findings of the ALJ are supported by substantial evidence.  Blakley v. Comm'r of Social Security, 581 F.3d 399, 405 (6th Cir. 2009); Richardson v. Perales, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  See Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, that determination must be affirmed.  Id.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute

12

differently, or substantial evidence also supports the opposite conclusion.  See

Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986); Kinsella v. Schweiker, 708 F.2d

1058, 1059 (6th Cir. 1983).  This court may not try the case de novo, resolve

conflicts in the evidence, or decide questions of credibility.  See Garner v. Heckler,

745 F.2d 383, 387 (6th Cir. 1984).  However, the court may examine all the evidence

in the record in making its decision, regardless of whether such evidence was cited

in the Commissioner's final decision.  See Walker v. Sec'y of Health & Human

Servs., 884 F.2d 241, 245 (6th Cir. 1989).


## VIII.  ANALYSIS

### A.  Post-Hearing Evidence

Medina first challenges the ALJ's decision on this basis:

> An ALJ has a duty to proffer to claimant any evidence received post-hearing.  Here, the ALJ did not proffer the report of the post-hearing consultative physical examination ordered by the ALJ (which showed disability), the letter from a State-agency consultant criticizing the CE report, and the CE's resulting restatement of her opinion to claimant's detriment.

(Doc. 17, at 1.)

Medina argues that reversal is appropriate when a post-hearing physical

consultative opinion was not proffered to him, in violation of due process and the

agency's Hearings, Appeals and Litigation Law Manual ("HALLEX"), Sections I-2-7-

1 and I-2-7-30.  (Doc. 17, at 5.)

13

As the hearing before the ALJ concluded, the ALJ had directed Medina to appear for a consultative examination by a doctor, to get an assessment of the condition of his back.  (Tr., at 78.)  Among other recommendations, the resulting Sept. 7, 2011, report of Kimberly Togliatti-Trickett, MD, limited Medina's handling, fingering, and feeling to "occasionally."  (Tr., at 340.)  The report noted that this finding was based on subjective complaints of pain with use of both hands.  (Tr., at 340, 465.)  In a subsequent Nov. 8, 2011, letter clarifying her findings, Dr. Togliatti-Trickett stated, "During the history and physical exam findings, the claimant had normal function of his hands with use for handling objects.  The checklist references the patient's subjective complaints of his hand function with handling, fingering, feeling, and pushing/pulling based on the repetitious nature."  (Tr., at 465.)

Medina complains that he did not receive copies of Dr. Togliatti-Trickett's September 7, 2011, report; the state agency's November 2, 2011, letter raising the possibility of some  discrepancies in the report; or Dr. Togliatti-Trickett's November 8, 2011, response.  See generally tr., at 333-347, 466, 465.  Medina notes that the state agency's November 2 letter asked for clarification of the apparent contradiction between the checklist limiting hand use to "occasional" and the doctor's narrative saying that Medina would have "no problems handling objects." (Doc. 17, at 5, citing tr., at 466.)  Medina contends that Dr. Togliatti-Trickett's response (quoted above) was unclear as to "whether the doctor believed Medina's complaints about repetitious hand function were consistent with the physical examination . . . and Medina's history of carpal tunnel syndrome."  (Doc. 17, at 6.)

14

Medina states that the fact that none of these three items were proffered to him was harmful, "as Medina had no opportunity of seek assistance or take other action about the very unusual sequence of correspondence in this case."  Id. at 6.

Medina relies on an unpublished decision from the Eastern District of Tennessee for authority that the decision under review here should be reversed on this basis.  (Doc. 17, at 5, quoting Gaines v. Commissioner, No. 1:12CV276, 2013 WL 4494966 (E.D. Tenn. Aug. 20, 2013).)  Gaines pointed out that the Sixth Circuit had held that an agency is bound to follow its own regulations, even when the regulations provide protections more generous than the agency would otherwise be required to provide.  Gaines, 2013 WL 4494966, at *8, citing Wilson v. Commissioner, 378 F.3d 541, 545 (6th Cir. 2004).  In Gaines, the district court found the HALLEX regulations required that, if an ALJ entered post-hearing evidence into the record, the ALJ must either allow the claimant to review all the evidence, or must have a valid waiver of proffer.  Gaines, 2013 WL 4494966, at *8.

The Commissioner responds that HALLEX is not binding on the courts.  (Doc. 18, at 8, citing Bowie v. Commissioner, 539 F.3d 395, 399 (6th Cir. 2008).)  The Commissioner also argues that Medina has not demonstrated that failure to comply with HALLEX procedures is a due process violation.  Id.

In Bowie, the claimant argued that the ALJ had committed procedural error by not addressing her "borderline" age status.  Bowie, 539 F.3d at 398-399.  The Sixth Circuit found that the ALJ's decision to deny the claimant benefits was supported by substantial evidence, and not the product of procedural error.  Id. at

15

399.  In discussing the borderline age situation, the court noted that the procedural guidance set forth in HALLEX was not binding on the court.  Id. at 399.  However, more importantly, the court determined that there was no procedural requirement in the applicable C.F.R. section to address age categorization explicitly in borderline situations.  Id. at 400.

The Sixth Circuit then addressed the Wilson decision:

> This court's decision in Wilson v. Commissioner, 378 F.3d 541 (6th Cir. 2004), is not to the contrary.  Although Bowie is correct that Wilson stands for the proposition that remand is appropriate when an agency fails to follow its own procedural requirements, Wilson is distinguishable from the instant case in that the ALJ in Wilson demonstrably violated a clear elaboration requirement imposed explicitly by the regulations.  Section 404.1527(d)(2) promises claimants that the Administration will "always give good reasons in our notice of determination or decision" for not giving weight to a treating physician's opinion in the context of a disability determination. 20 C.F.R. § 404.1527(d)(2).  Despite this "good reasons" requirement, the ALJ in Wilson rejected the opinion of the claimant's treating physician without providing any explanation.  Wilson, 378 F.3d at 545.  This action violated the ALJ's clear explanatory obligation to "give good reasons" for rejecting a treating physician's opinion.  By contrast, the regulations governing borderline age situations do not impose a procedural explanatory requirement.

Bowie, 539 F.3d at 400.  Thus, Bowie is clearly distinguishable from the situation at hand, which is more akin to the situation before the court in Gaines.  Similar to the case at hand, the claimant in Gaines was not provided with a physical consultative opinion which appeared in the record, and argued that violated agency regulations.  Gaines, 2013 WL 4494966, at *5, *8.

In Gaines, the court did not rely solely on the guidance provided by HALLEX, but also found a due process violation, requiring remand, supported in the C.F.R.,

16

Gaines, 2013 WL 4494966, at *10, citing 20 C.F.R. § 404.916(f), as well as Sixth

Circuit precedent.  Citing Buchanan v. Apfel, the court pointed out that the Sixth

Circuit held that the Commissioner has a clear, nondiscretionary duty to comply

with his own regulations.  Gaines, 2013 WL 4494966, at *10, citing Buchanan v.

Apfel, 249 F.3d 485, 492 (6th Cir. 2001).

In addition, the court noted that due process requires that a claimant be

given the opportunity to review all the evidence before her claim is denied.  Gaines,

2013 WL 4494966, at *10; see also Flatford v. Chater, 93 F.3d 1296, 1306-1307 (6th

Cir. 1996) (due process requires claimant to have opportunity to present evidence

and confront evidence against him).  The Gaines court quoted from a Sixth Circuit

case:

> While the Secretary may consider evidence obtained post-hearing, see
> generally Lawson v. Secretary of Health and Human Servs., 688 F.2d
> 436, 439-440 (6th Cir. 1982), the claimant must be given an
> opportunity to review the evidence and, if desired, an opportunity to
> cross-examine the authors, or to rebut such a report.  As the ALJ did
> not provide Watkins an opportunity to review or rebut Dr. Lee's
> supplemental report, we conclude that the Secretary violated
> Watkins's due process rights.

Gaines, 2013 WL 4494966, at *10, quoting Watkins v. Secretary of HHS, 7 F.3d

237, 1993 WL 393075, at *1-*2 (6th Cir. Oct. 4, 1993) (TABLE, text in WESTLAW)

(internal citations omitted); see also Laddy v. Astrue, No. 4:11CV293, 2012 WL

776551, at *11 (N.D. Ohio Feb. 2, 2012) (citing Watkins).  Gaines also stated that

Watkins established that the remedy for the violation of the claimant's due process

17

rights was reversal and remand. Gaines, 2013 WL 4494966, at *10, citing Watkins, 1993 WL 393075, at *2.

The court finds that claimant Medina has the better of the argument on the due process issue.

The Commissioner also contends that the post-hearing physical consultative opinion should not be considered a medical report or consultative opinion. (Doc. 18, at 8.) She claims that Medina "does not argue that the post-hearing evidence at issue was inconsistent with the ALJ's finding regarding [Medina's] back impairment." Id. at 9. The Commissioner also states that Medina was not prejudiced because once Medina retained counsel the complete medical file, including the evidence at issue here, was provided to counsel. Id.

There is little question that Dr. Togliatti-Trickett's report should be considered "a medical report or consultative opinion." The ALJ informed Medina at the hearing that he was going to send Medina "to a consultative examination by a medical doctor," for the purpose of having an orthopedic doctor give an assessment of his back condition. (Tr., at 78.) The ALJ informed Medina that the medical information provided by that doctor would be reviewed by the ALJ before he issued his written decision. Id.

In any event, as Medina points out, he is entitled to post-hearing evidence which the ALJ makes part of the record, whether such evidence is a medical report or consultative opinion, or other evidence. See generally Flatford, 93 F.3d at 1306-1307; Watkins, 1993 WL 393075; Gaines, 2013 WL 4494966, at *10; Laddy, 2012

18

WL 776551, at *11.  The purpose is to allow the claimant to have input on the evidence before the ALJ issues his decision.  See, e.g., 20 C.F.R. § 404.916(f).

Given especially the fact that Medina was unrepresented, the court finds that Medina's due process rights were violated in that he was not given access to the post-hearing evidence which the ALJ considered in coming to his decision denying Medina's application for benefits.  It is not certain that awareness of the state agency's November 2, 2011, letter raising "some discrepancies and apparent contradictions" in Dr. Togliatti-Trickett's report would have led Medina to seek counsel, or to proceed in some other manner.  See generally tr., at 466. Nonetheless, Medina was entitled to have this evidence, as well as Dr. Togliatti-Trickett's report itself, and her response.  The Commissioner's decision denying benefits is reversed and remanded on this basis.  See Watkins, 1993 WL 393075; Gaines, 2013 WL 4494966, at *10; see generally Flatford, 93 F.3d at 1306-1307.


### B.  Duty to Unrepresented Claimant

Medina also challenges the ALJ's decision on this basis:

> An ALJ has a heightened duty to unrepresented claimants, especially
> claimants with limited understanding.  Medina was unrepresented,
> and had poor English, low IQ, and other severe mental conditions.  Yet
> the ALJ did not clarify repetitive hand use, interpersonal interactions,
> and anxiety and psychosis, nor explain the issues meaningfully, and
> did not clarify how the named jobs could be performed without literacy.

(Doc. 17, at 1.)

19

Medina asserts that the ALJ has the ultimate responsibility to ensure every claimant receives a full and fair hearing, and has a heightened duty to develop the record when the claimant is unrepresented by counsel.  (Doc. 17, at 6, citing Lashley v. Secretary, HHS, 708 F.2d 1048, 1051-1052 (6th Cir. 1983).)

In Lashley, the Sixth Circuit discussed the special duty of the ALJ  to ensure that every claimant receives a full and fair hearing, and the heightened duty to develop the record when the claimant is unrepresented.  Lashley, 708 F.2d at 1051-1052 (citing cases); see also Trandafir v. Commissioner, No. 00-3634, 2003 WL 245341, at *2 (6th Cir. Jan. 31, 2003).  In Wilson v. Commissioner, the Sixth Circuit clarified Lashley, stating that "under special circumstances – when a claimant is (1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures – an ALJ has a special, heightened duty to develop the record." Arnwine v. Commissioner, No. 1:12CV1483, 2013 WL 3365137, at *13 (N.D. Ohio  July 3, 2013) (quoting Wilson v. Commissioner, No. 07-5810, 2008 WL 2224834, at *3 (6th Cir. May 29, 2008)).  Because the claimant in Wilson grasped the proceedings and adequately presented her case to the ALJ, the court found no error. Id.

In Lashley, the court found that the ALJ had failed to adequately develop the record, and thus the claimant was denied a full and fair hearing.  Lashley, 708 F.2d at 1051.  The court found that, at a hearing with an unrepresented claimant, the ALJ must satisfy his special duty by scrupulously and conscientiously probing into

20

and exploring for all the relevant facts.  Lashley, 708 F.2d at 1052 (quoting Gold v.
Secretary, HEW, 463 F.2d 38, 43 (2d Cir. 1972).)

The Lashley court stated that there was no bright line test for determining
when the ALJ had failed to fully develop the record, and that such a determination
was made on a case-by-case basis.  Lashley, 708 F.2d at 1052.  The court also noted
that a claimant may waive his statutory right to counsel.  Id., citing 20 C.F.R. §
404.971.  In the case before it, the court found that the ALJ did not fulfill his
responsibility.

The court pointed out that the claimant in Lashley "possessed limited
intelligence, was inarticulate, and appeared to be easily confused."  Lashley, 708
F.2d at 1052.  The court noted that the hearing was brief, lasting a "a mere 25
minutes."  Id.  The claimant was only superficially questioned concerning his daily
activities and his physical limitations.  The court stated that:

> Superficial questioning of inarticulate claimants or claimants with
> limited education is likely to elicit responses which fail to portray
> accurately the extent of their limitations.
>
> * * * * *
>
> More probing questioning concerning how often the activity is
> attempted, how long he is capable of sustaining the activity, and what
> adverse consequences he suffers as a result of the activity would
> undoubtedly have provided more probative information concerning his
> physical limitations.

Lashley, 708 F.2d at 1052.

In this case, the hearing lasted for 41 minutes.  (Tr., at 50, 79.)  Medina
contends that the ALJ "explained the right to representation to Medina in language

21

that Medina likely did not understand." (Doc. 17, at 7, citing tr., at 51-53.)  The

transcript demonstrates that the ALJ used fairly straightfoward language, and

Medina was then asked,

> ALJ:  . . . Do you understand your rights to representation?

> CLMT:  Yes, sir. Yes.

> ALJ:  Okay.  How would you wish to proceed?  If you want time to get
> a representative, I will continue this case and give you time to get an
> attorney or a non-attorney as a representative.

> CLMT:  I can go on.

> ALJ:  You want to keep going?

> CLMT:  Yeah, thanks.

(Tr., at 52.)  The ALJ's subsequent questions of the claimant concerning his daily

life and work limitations were somewhat more probing than the questions asked in

Lashley.  See generally tr., at 55-70.

Medina complains that the ALJ did not inquire about Medina's ability to

understand or speak English, doc. 17, at 7, but the record shows the ALJ did ask

about that.  (Tr., at 59.)  In addition, although his English was not perfect, Medina

testified without a translator, and did not appear to have any difficulty

understanding and responding to the ALJ's questions.

Medina argues that the ALJ failed to explore any difficulties learning tasks,

or about emotional problems such as claustrophobia, or distraction by hearing

voices.  (Doc. 17, at 7, citing tr., at 196.)

Medina also contends that the ALJ did not properly explore the issue of repetitive hand use, and when Medina spoke about hand issues, the ALJ did not follow up. (Doc. 17, at 7, citing tr., at 56, 62, 66, 69.) The cited references to the record indicate that Medina alerted the ALJ to his carpal tunnel syndrome, both left and right. The ALJ followed up, but only as to Medina's ability to grip, carry, and lift weight, not to any repetitive use issues. (Tr., at 66-67, 69.) It is worth noting, however, that in his application for benefits Medina had reported his physical or mental conditions which limited his ability to work as "Breathing/sleep apnea/depression." (Tr., at 150.) There was no indication in his application of difficulties relating to repetitive use of his hands. See, e.g., tr, at 151-152.

Medina also complains that the hypothetical questions to the vocational expert were "asked in complicated ways that the claimant had little chance of understanding." (Doc. 17, at 8.) However, when presented with the opportunity, Medina had no questions. (Tr., at 77.)

The second alleged error is overruled.


### C. Opinion of State-Agency Doctor

Medina challenges the ALJ's decision on this basis:

> An ALJ must explain why the opinion of a State-agency review doctor is not adopted. Here, the decision gave "significant weight" to State-agency reviewer Dr. Lewin, but inaccurately stated, and without explanation failed to adopt, some of the restrictions assigned by Dr. Lewin, including only "minimal" interactions and only a low-stress environment.

(Doc. 17, at 1.)  Medina asserts that state agency doctors[4] are considered highly-qualified experts in disability evaluation, and the ALJ must explain any rejection of the state-agency reviewing doctor's opinions, and failed to do so.  (Doc. 17, at 8, citing 20 C.F.R. §§ 416.927(e)(2)(i) and (ii).)

Medina notes that the ALJ gave "significant weight" to state-agency reviewing psychologist Dr. Lewin.  (Doc. 17, at 9.)  However, Medina asserts that the ALJ "inaccurately paraphrased" Dr. Lewin's RFC in key ways.  He believes, for example, that there is "a significant difference" between Dr. Lewin's conclusion that Medina is able to work in a "low stress environment with minimal interaction with others," tr., at 203, and the ALJ's paraphrase that Medina be limited to a workplace where he would have "limited contact with others and would not have to deal with any fast-paced or strict production quotas," tr., at 37.  The Commissioner points out that Medina "does not explain or otherwise point to any authority for his assertion." (Doc. 18, at 11.)  That point is well-taken.

A review of the ALJ's decision demonstrates that the ALJ did not "reject" Dr. Lewin's opinion, as Medina suggests, despite the slight variation in the terminology used.  The ALJ stated that Dr. Lewin provided a medical opinion, which was evaluated by the ALJ and accorded "significant weight."  The ALJ noted that Dr. Lewin's opinion was consistent with the claimant's objective treatment record, and

---

[4] To clarify, Dr. Lewin is not a physician, but a psychologist with a Ph.D. Nevertheless, the cited regulations encompass psychological consultants as well as physicians.

that there was no suggestion in the medical record that Medina's mental health impairments were more limiting than Dr. Lewin indicated. (Tr., at 38.) The ALJ's determination that Medina, within his limitations, could perform certain jobs in the national economy was in accord with those limitations. See generally tr., at 74-75, 41.

The third alleged error is overruled.

### D. Opinion of Agency Consultative Examiner (I)

In addition, Medina challenges the ALJ's decision on this basis:

> An ALJ must explain why the opinion of the agency's consultative examiner is not adopted. Here, the decision selectively considered and did not address most of the relevant findings in the psychological consulting examination report by Dr. [sic] Halas, despite giving that report significant weight.

(Doc. 17, at 1-2.) Medina states that the agency's consulting examiners are considered experts in disability evaluation, and adequate rationale must be given for rejecting each of their findings. (Doc. 17, at 10, citing SSR 96-7p, and cases.) Medina notes that consultative examiner Richard Halas, M.A., a clinical psychologist, found that Medina showed high levels of anxiety, and reported that he was moderately impaired in his ability to handle instructions; to perform simple, repetitive tasks; to relate to coworkers; and in his ability to withstand the pressures of day-to-day work. (Doc. 17, at 11.)

The Commissioner responds that the ALJ properly considered the opinion of Halas, noting that his opinion was endorsed by Dr. Lewin, and that Halas' opinion

was entitled to significant weight.  (Doc. 18, at 12, citing tr., at 38.)  The Commissioner asserts that the ALJ explained the extent to which Halas' opinion was factored into the assessment of Medina's RFC.  Id. at 12-13.

The ALJ's decision discussed his determination that Halas' opinion was entitled to significant weight, giving reasons for that determination, for example, that Dr. Lewin and Dr. Haskins both endorsed Halas' opinion, and that his opinion was consistent with the objective medical evidence.  (Tr., at 38.)

Medina contends that the RFC did not reflect Halas' opinion that Medina was moderately impaired in the attention and concentration to perform even simple, repetitive tasks, and the impact of the pressure of normal, day-to-day work activity.  (Doc. 17, at 12.)  Medina asserts that the RFC finding, and the hypothetical question, should have included, for example, "significant limitations on performing the instructions of even simple, repetitive tasks."  (Doc. 17, at 12.)

As noted above, however, Halas found only "moderate" impairment in the areas that Medina highlights.  (Tr., at 199.)  There is no indication in the ALJ's decision that the ALJ "ignored" (doc. 17, at 12) Halas' opinion, particularly in light of the discussion given to the weight assigned to Halas' opinion.  (Tr., at 38.)  Halas did not recommend "significant limitations," for example.  See generally tr., at 199-200.

While the ALJ must consider all the evidence in the record, there is no requirement that the ALJ discuss every single limitation considered by Halas.  See, e.g., Atkinson v. Astrue, No. 09-1369, 2010 WL 2977593, at *3 (10th Cir. July 29,

26

2010) (citing Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996) (while ALJ must consider all evidence in record, nothing requires discussion of every piece of evidence)); Thacker v. Commissioner, No. 02-6138, 2004 WL 1153680, at *3 (6th Cir. May 21, 2004) (ALJ need not discuss every piece of evidence in the record). "Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered."  Simons v. Barnhart, No. 04-5021, 2004 WL 2633448, at *6 (6th Cir. Nov. 18, 2004) (quoting Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000)).

The fourth alleged error is overruled.


## E.  Opinion of Agency Consultative Examiner (II)

Medina further challenges the ALJ's decision on this basis:

> An ALJ must explain why the opinion of the agency's consultative examiner is not adopted.  Here, the decision discounted the report by agency's consulting examiner Dr. Zeck as being inconsistent with a prior examination, but failed to note the worsening of Medina's condition between the two examinations, as shown by Medina's seeking psychiatric treatment and an involuntary commitment to a psychiatric unit.

(Doc. 17, at 2.)

This alleged error concerns the opinion of Thomas Zeck, Ph.D., a psychologist and a consultative examiner who also examined Medina, nine months after Halas examined him.  Medina argues that his brief hospitalization in the Psych unit in March 2010 should have indicated a worsening of his condition, and should have led

27

the ALJ to adopt the more recent findings of Dr. Zeck.  He claims that Dr. Haskins failed to note the March 2010 hospitalization and diagnosis.  (Doc. 17, at 14.)

The ALJ considered Dr. Zeck's opinion but determined it was entitled to little weight, for several reasons.  (Tr., at 38.)  For one, the ALJ pointed to Dr. Haskins' reasons for discounting Dr. Zeck's opinion.  (Tr., at 37-38.)  Dr. Haskins outlined several inconsistencies between the opinions of Dr. Zeck and Halas, and concluded that Dr. Lewin had reached the correct conclusion (that Halas' conclusions were consistent with the claimant's allegations and the overall evidence).  (Tr., at 37; 286.)  Second, the ALJ pointed out that Dr. Lewin and Halas both opined that Medina had significantly fewer limitations.  (Tr., at 38.)  Third, the ALJ found that the objective record was not consistent with Dr. Zeck's opinion that Medina had marked limitations in relating to others, or moderate to marked limitations in understanding, remembering and following instructions.  (Tr., at 38.)  The ALJ found that, aside from the brief, involuntary commitment, Medina received conservative mental health treatment, although he was not consistently compliant with his prescribed medications or treatment.  The ALJ found no suggestions in the medical record that Medina's mental health impairments were as limiting as Dr. Zeck suggested. (Tr., at 38.)

In view of the above, it can hardly be said that the ALJ failed to explain why the opinion of Dr. Zeck was not adopted.  Even though the ALJ did not adopt Dr. Zeck's report, and assigned it little weight, he explained his basis for doing so. Although the ALJ reviews and considers all the evidence before him, the

responsibility for assessing the claimant's residual functional capacity rests with the ALJ.  20 C.F.R. § 416.946(c).   The alleged error is overruled.

## F.  Manipulation and Fingering

The next error Medina finds in the ALJ's decision is the following:

> An ALJ must adequately evaluate the restrictions caused by each impairment. Here, the decision did not adequately evaluate the Plaintiff's ability to do repetitive, frequent handling and fingering, which the vocational expert testified is necessary for all of the named occupations.

(Doc. 17, at 2.)  Medina states that the ALJ failed to ask him about what limitations on repetitious handling were caused by his carpal tunnel syndrome.[5]  (Doc. 17, at 15.)

The vocational expert, Stricklin, testified that Medina had done past work as a dishwasher, DOT 318.687-010, ordinarily medium and unskilled work, but as described by Medina performed at the light level.  (Tr., at 72.)  Later, the ALJ modified the hypothetical, introducing the element of manipulation:  ". . . this hypothetical individual could engage in bilateral gross manipulation of objects and bilateral fine finger manipulation of objects on a frequent basis."  (Tr., at 74.)  Stricklin responded that such an individual could perform Medina's past work, as

---

[5] It is worth noting, again, that in his application Medina had reported his physical or mental conditions which limited his ability to work as "Breathing/sleep apnea/depression."  (Tr., at 150.)  There was no indication in his application of difficulties relating to repetitive use of his hands.  Nevertheless, the ALJ did raise manipulation conditions in his hypotheticals.  (Tr., at 76-77.)

well as cleaner, laundry worker, or cafeteria server.  (Tr., at 74-75.)  These are the occupations which the ALJ subsequently determined that Medina could perform. (Tr., at 41.)

At the hearing, when the ALJ modified the hypothetical "to the point where the individual might be able to engage in gross manipulation and fine finger manipulation of objects on no more than an occasional basis," tr., at 76, Stricklin responded that it would change the prospect for those jobs, because the jobs would require "frequent use of the upper extremities," tr., at 76, both at the light level or at the sedentary level.

Medina contends that the ALJ did not adequately evaluate Medina's ability to do repetitive handling and fingering.  He complains that Dr. Togliatti-Trickett was never specifically asked about repetitive hand use.  (Doc. 17, at 15.)  The Commissioner responds that substantial evidence supports that ALJ's finding that Medina was limited to frequent bilateral gross manipulation and fine-finger manipulation of objects, and that he should avoid all exposure to operational control of moving machinery.  (Doc. 18, at 14.)

Dr. Togliatti-Trickett had examined Medina, acknowledged his carpal tunnel syndrome, and noted "normal sensation with light touch and pin prick distally in the fingers but diminished to pin prick in the wrists bilaterally. . . . There was normal hand grasp, manipulation, pinch and fine coordination bilaterally."  Dr. Togliatti-Trickett noted Medina had no problem handling objects.  She also pointed out that Medina "is limited by his subjective complaints of pain which outweigh his

30

physical exam findings noted today." (Tr., at 346.)  In her November 8, 2011, letter
of clarification, Dr. Togliatti-Trickett stated that Medina had normal function of his
hands during the physical exam, but she noted as well his "subjective complaints" of
his hand function.  (Tr., at 465.)

The ALJ has the responsibility for reviewing all the evidence in making his
determinations.  20 C.F.R. § 416.927(e)(2).  The ALJ evaluates every medical
opinion received in evidence.  20 C.F.R. § 416.927(c).  The ALJ will consider any
statements that have been provided by medical sources, whether or not based on
formal medical examinations.  20 C.F.R. § 416.945(a)(3).  Although the ALJ reviews
and considers all the evidence before him, the responsibility for assessing the
claimant's residual functional capacity rests with the ALJ.  20 C.F.R. § 416.946(c).
Here, the ALJ's findings were supported by relevant evidence and consistent with
the record as a whole.  The court finds that the ALJ's decision is based on
substantial evidence in the record, as outlined in his findings and supported by
medical evidence.  The alleged error is overruled, although on remand the ALJ may
wish to re-examine this issue in light of the finding associated with the first
assignment of error.

### G.  Conflict with Dictionary of Occupational Titles

Finally, Medina alleges the following error:

An ALJ must resolve any conflicts between the testimony of a
vocational expert and the Dictionary of Occupational Titles.  Here, the
three light occupations named are inconsistent with the hypothetical

31

> question in the areas of hand use and amount of interaction with
> people, yet the ALJ made no effort to clarify these conflicts for the
> unrepresented, incapable claimant.

(Doc. 17, at 2.)

At the hearing, in response to the ALJ's question, the vocational expert Stricklin had testified that her testimony was consistent with the <u>Dictionary of Occupational Titles</u>. (Tr., at 77.) In the Sixth Circuit, the ALJ has fulfilled his obligation if he asks whether the vocational expert's testimony is consistent with the DOT. Dyer v. Social Sec. Admin., No. 13-6024, 2014 WL 2609548, at *5 (6th Cir. June 11, 2014) (citing Lindsley v. Commissioner, 560 F.3d 601, 606 (6th Cir. 2009)); Winslow v. Commissioner, No. 13-6252, 2014 WL 1924486, at *1 (6th Cir. May 15, 2014) (per curiam); Johnson v. Commissioner, No. 12-2249, 2013 WL 5613535, at *10 (6th Cir. Oct. 15, 2013) (citing Martin v. Commissioner, No. 04-4551, 2006 WL 509393 (6th Cir. Mar. 1, 2006)); Kyle v. Commissioner, 609 F.3d 847, 858 (6th Cir. 2010). The ALJ is not required to conduct an independent investigation into the vocational expert's testimony, particularly if no apparent conflict exists to warrant further investigation. Winslow, 2014 WL 1924486, at *1; Johnson, 2013 WL 5613535, at *10; Lindsley, 560 F.3d at 606.

Furthermore, "[a]n ALJ is not bound by the job classifications in the DOT and 'may accept testimony of a vocational expert that is different from information in the Dictionary of Occupational Titles.'" Pena v. Commissioner, No. 3:07CV957, 2008 WL 3200253, at *5 (N.D. Ohio Aug. 4, 2008) (quoting Conn v. Secretary, HHS, 51 F.3d 607, 610 (6th Cir. 1995)); see also Wright v. Massanari, 321 F.3d 611, 616

32

(6th Cir. 2003) (citing Conn).  Where the vocational expert does not identify any conflict between her testimony and the information provided in the DOT, the ALJ "has no responsibility to identify or resolve a conflict that is not otherwise apparent."  Pena, 2008 WL 3200253, at *5 (citing cases).

The seventh alleged error is overruled.


SUMMARY

The court finds merit in the first error alleged by Medina.  The case is remanded to allow the parties to properly address the post-hearing evidence.  On remand, this should provide opportunity for further clarification of the issues raised in the sixth alleged error.  The Commissioner's decision denying benefits is REVERSED and REMANDED for action consistent with this Order.

The other claims raised by Medina are overruled.


IT IS SO ORDERED.

Dated:   Sept. 23, 2014            /s/ Kenneth S. McHargh
                                  Kenneth S. McHargh
                                  United States Magistrate Judge